UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEAL WIESNER,                                              :
                                                          :
                                      Plaintiff,          :
                                                          :        06 Civ. 3533 (HB)
              - against -                                 :
                                                          :        <u>OPINION</u>
                                                          :        <u>AND</u> <u>ORDER</u>
HON. EUGENE NARDELLI, HON MILTON L.                       :
WILLIAMS, HON. PETER TOM, HON.                            :
ANGELA M. MAZZARELLI, and HON. DAVID                      :
SAXE, as Justices of the New York State Supreme           :
Court, Appellate Division, First Department,              :
                                                          :
                                      Defendant.          :
------------------------------------------------------------------------x
Hon. HAROLD BAER, JR., District Judge:

   Neal Wiesner ("Wiesner" or "Plaintiff") brings this action, pursuant to 42 U.S.C. § 1938, against Appellate Division Justices Hon. Eugene Nardelli, Hon. Milton L. Williams, Hon. Peter Tom, Hon. Angela M. Mazzarelli, and Hon. David B. Saxe ("Defendants"). Wiesner challenges the constitutionality of New York's regulations governing admission of attorneys to the bar regarding character and fitness, i.e., N.Y. JUD. CT. ACTS § 90(1)(a) (2006), N.Y.C.P.L.R. 9404 (2006), and N.Y. COMP. CODES R. & REGS. 22 § 520.11 (2006). Wiesner also brings related state law claims. Defendants have moved to dismiss Plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

   Because *res judicata* bars certain of Wiesner's constitutional claims, and Wiesner's remaining constitutional claims fail as a matter of law, I am granting Defendants' motion to dismiss in full.[1]

## I.  BACKGROUND

 A. <u>Underlying Facts</u>

   Plaintiff Neal Wiesner is a twice-convicted felon. Plaintiff's Complaint at ¶¶ 6-8

---
[1] The Court wishes to thank Lucas Charleston of New York Law School for his assistance in researching and preparing this Opinion.

("Pl. Complaint").[2]  After his release from prison in 1990, Wiesner graduated from law school, passed the New York bar examination, and applied for admission to the Appellate Division, First Department.  Pl. Complaint at ¶¶ 5, 11-12.  The Appellate Division's Committee on Character and Fitness formed a special three-member sub-committee to investigate Wiesner's application.  Declaration of Monica Connell in Support of State Judiciary Defendants' Motion to Dismiss ("Connell Decl."), Ex. 2.  After three days of hearings, at which Wiesner and other prominent members of the bar testified, the sub-committee recommended 2 to 1 to deny Wiesner's application.  See Connell Decl., Ex. 2.[3]  The sub-committee issued a majority and minority report outlining their findings and conclusions, and provided Wiesner with a copy of both.  See Connell Decl., Ex. 2; Plaintiff's 1998 Amended Complaint, at Connell Decl., Ex. 4, ¶ 28.[4]

Based on the sub-committee report, the full Committee on Character and Fitness denied Wiesner's application for admission by a 7 to 4 vote.  See Connell Decl., Ex. 2, ¶ 14-15.  Wiesner then applied on November 27, 1995, to the Appellate Division, First Department for an order granting his application notwithstanding the Committee's decision.  State Judiciary Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint ("Def. Motion to Dismiss"), at 5.  The First Department denied Wiesner's application.  Id.  Wiesner then sought leave to appeal before the Court

---

[2] In 1987, Plaintiff pled guilty to conspiracy to violate federal narcotics laws and to distribution and possession of narcotics.  See Majority Report, Ex. 2 to Declaration of Monica Connell in Support of State Judiciary Defendants' Motion to Dismiss ("Connell Decl.") at 2-3.  In 1991, Plaintiff entered an Alford-Serrano plea to attempted murder.  See Pl. Compl. at ¶ 8.  Plaintiff had previously vacated his 1985 conviction for attempted murder via a successful pro se habeas corpus petition.  Wiesner v. Abrams, 723 F.Supp. 912 (E.D.N.Y. 1989).  Upon Plaintiff's Alford-Serrano plea, the Court reduced Plaintiff's sentence to less time than he had already served.  See Pl. Compl. at ¶ 8.

[3] The prominent members of the bar testifying in Wiesner's behalf included Fordham Law School Dean John Feerick, Brooklyn District Attorney Charles Hynes, Criminal Court Judge Leslie Leach, United States District Court Judge Gerald L. Goettel, Commissioner Virginia Hauer of the New York State Workers Compensation Board, New York City Probation Officer Dennis Texcidor and Joseph Forstadt, a partner at Stroock Stroock & Lavan.  See Wiesner v. Rosenberger, 1998 U.S. Dist. LEXIS 15666, at *3 n.3 (S.D.N.Y. Oct. 6, 1998) ("Wiesner I").

[4] The Majority Report focused on the nature and severity of Wiesner's crimes, as well as the fact that they occurred relatively recently before Wiesner's application.  See Majority Report, at Connell Decl., Ex. 2, at 7.  The Majority Report also found that Wiesner was equivocal in his answers regarding his convictions, as well as that his testifying witnesses were not, in some cases, aware of the severity of his crimes.  Id., at 7, 9.

The dissenting Minority Report found that his favorable record since completion of his sentence and release from prison, including his drug-free history since his crimes, and his participation in programs helping other ex-offenders to rehabilitate themselves, supported Wiesner's admission to the bar.  See Minority Report, at Connell Decl., Ex. 2.

of Appeals.  The Court of Appeals denied Wiesner's application for leave.  Id.  Since then, Wiesner has renewed his application for admission to the First Department on at least eight occasions; the First Department has denied his application each time, most recently in March 2006.  Pl. Complaint at ¶¶ 11, 18.

Wiesner was admitted to the New Jersey bar in 2005.  Pl. Complaint, ¶¶ 15-16.

B.  Wiesner's 1998 Action

Wiesner previously brought an action in 1998 in this Court against the then-First Department Justices alleging that the Justices violated his constitutional rights to Due Process and Equal Protection.  See Wiesner v. Rosenberger, 1998 U.S. Dist. LEXIS 15666 (S.D.N.Y. Oct. 6, 1998) ("Wiesner I").[5]  Specifically, Wiesner alleged then that 1) New York's character and fitness rules governing bar admission violated Due Process as vague and overbroad; 2) New York's character and fitness rules governing bar admission violated Equal Protection, as the rules allowed for disparate application with respect to similarly situated bar applicants in different departments; and 3) the Justices' actions unlawfully restrained trade and violated New York corrections law and Human Rights law.  See Wiesner I, at *4; Plaintiff's 1998 Amended Complaint, at Connell Decl., Ex. 4.

I dismissed Wiesner's as-applied Due Process, Equal Protection, and unlawful restraint of trade challenges pursuant to Rooker-Feldman doctrine.  Wiesner's as-applied challenges improperly constituted "a thinly veiled attempt to review the Appellate Division's decision."  Wiesner I, 1998 U.S. Dist. LEXIS 15666, at *11, citing, e.g., Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 468-70 (1983) ("Feldman"); Moccio v. New York State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996).

I dismissed Wiesner's general constitutional challenges for failure to state a § 1983 claim.  Rooker-Feldman did not bar Wiesner's general challenges from federal court review, as Wiesner was not seeking direct review of his state court claims on the merits.  Wiesner I at *9, citing Feldman, 460 U.S. at 482-83.  However, I dismissed Wiesner's general Due Process challenge for vagueness and overbreadth, as the U.S. Supreme Court had previously upheld New York's character and fitness regulations

---

[5] Wiesner's 1998 complaint alleged the constitutional violations as applied to him.  I construed his challenges liberally as general challenges, in part to evade the application of Rooker-Feldman doctrine. See Wiesner I, 1998 U.S. Dist. LEXIS 15666, at *9-10.

against similar challenges.  Wiesner I at *13-16, citing Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 159 (1971) ("Law Students").  I also dismissed Wiesner's general Equal Protection geographic challenge.  Because the bar admission rules neither impaired a fundamental right nor employed a suspect classification, employing rational basis review, I upheld the New York regulations.  Wiesner I at *17-18, citing McGowan v. Maryland, 366 U.S. 420, 427 (1961) ("[T]erritorial uniformity is not a constitutional prerequisite").

I then declined to exercise supplemental jurisdiction over Wiesner's remaining state law claims.  Wiesner I at *18-19.  The Second Circuit affirmed this Court's ruling in its entirety.  Wiesner v. Rosenberger, 1999 U.S. App. LEXIS 29259 (2d Cir. 1999) (unpublished).

C.   Wiesner's Instant Action

Wiesner now brings a new § 1983 action against the current Appellate Division, First Department Justices[6] alleging general (but not as-applied)[7] constitutional challenges to the same New York bar admission regulations,[8] as well as related state law claims.

Wiesner alleges again that the bar admission regulations are vague and overbroad under the Due Process Clause.  (He also alleges that the regulations are vague and overbroad under the First Amendment, a claim he did not bring in 1998.)  Additionally, Wiesner alleges that the bar admissions regulations violate Due Process in their failure to require a reason to be set forth for denial, as well as their failure to provide the applicant with the Appellate Division's law assistants' reports.[9]

---

[6] The five Appellate Division Justices Wiesner sues now are, except for one Justice, the same Appellate Division Justices Wiesner sued in 1998.  The only Defendant that differs is Justice Saxe, who has replaced Justice Rosenberger in the caption.

[7] Wiesner explicitly states in his briefs that his federal claims "in direct contrast to the 1998 action do not challenge the denial of plaintiff's admission."  Plaintiff's Opposition to Motion to Dismiss, at 3.  Originally, Wiesner sought in his complaint injunctive relief under § 1983 to enjoin the Justices from hearing his bar application.  Wiesner later retracted this claim in his briefs on the motion to dismiss.

[8] In both 1998 and his instant action, Wiesner challenges N.Y. JUD. CT. ACTS  § 90(1)(a), N.Y.C.P.L.R. 9404, and N.Y. COMP. CODES R. & REGS. 22 § 520.11.

[9] Wiesner, in his 1998 action, challenged the regulations as applied to him for their failure to give a reason for his denial.  "[T]he refusal of the defendants to give him any reasoning behind their denial is violative of his right to Due Process."  See Plaintiff's 1998 Amended Complaint, ¶ 45, at Connell Decl., Ex. 4.  I dismissed Wiesner's as-applied challenge under Rooker-Feldman.  1998 U.S. Dist. LEXIS 15666, at *11.  Although it is unclear whether Wiesner brought this particular Due Process challenge as a general challenge, I did not construe it and address it directly as such in my 1998 opinion.

Wiesner also alleges again that the bar admission regulations violate Equal Protection on geographic grounds, in that the rules allow for disparate application with respect to similarly situated bar applicants in different departments.

Wiesner also alleges several supplemental state law claims.  Wiesner alleges again that Defendants violated New York Corrections Law § 750 *et. seq.*, which provides ex-offenders with protection against discrimination.  Wiesner seeks vacatur of the Appellate Division's March 6, 2006 Order denying his motion to renew his application for admission under N.Y. C.P.L.R. Article 78, a claim he did not bring in 1998.[10] Wiesner also alleges that Defendants violated his First Amendment, Due Process and Equal Protection rights under the New York state constitution, Art. I, §§ 6, 9, 11.[11]

## II.      STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party.  See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002).  The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## III.      DISCUSSION

Defendants argue first, that principles of *res judicata* and collateral estoppel bar Wiesner's instant claims; and secondly, that Wiesner's claims fail on their merits, if they are not barred by various abstention doctrines.  I will consider each argument in turn.

---

[10] N.Y. C.P.L.R. § 9405 provides, for those whose application to the bar has been previously rejected, that they "shall obtain and submit the written consent of said appellate division to the renewal of his application in that appellate division or in any other appellate division."  N.Y. C.P.L.R. § 9405 (2006).

[11] Article I, Section 6 of the New York State Constitution, insofar as Wiesner refers to it, appears analogous to the federal Due Process Clause.  N.Y. CONST., Art. I, § 6.  Article I, Section 9 of the New York State Constitution, insofar as Wiesner refers to it, appears analogous to the federal First Amendment.  N.Y. CONST., Art. I, § 9.  Article I, Section 11 of the New York State Constitution, insofar as Wiesner refers to it, appears analogous to the federal Equal Protection Clause.  N.Y. CONST., Art. I, § 11.

It bears mentioning that the facts relating to Wiesner's claims are generally not in dispute.

A. *Res Judicata* and Collateral Estoppel

*Res judicata* bars "subsequent litigation of claims which were raised or could have been raised in a prior proceeding involving the same parties or their privies, which resulted in a judgment on the merits by a court of competent jurisdiction." Sassower v. Mangano, 927 F. Supp. 113, 120 (S.D.N.Y. 1996); see also Monahan v. New York City Dep't of Corr's., 214 F.3d 275, 284-85 (2d Cir. 2000). The party asserting *res judicata* bears the burden of proving these elements. Monahan v. New York City Dep't of Corr's., 214 F.3d 275, 284-85.

Wiesner's general Due Process challenge to the bar admission regulations for vagueness and overbreadth is squarely barred by *res judicata*. In Wiesner I, I dismissed the same general Due Process challenge pursuant to the Supreme Court's reasoning in Law Students. Wiesner I at *13-16, citing Law Students, 401 U.S. 154, 159.[12] Wiesner argues that because his first dismissal was for lack of subject matter jurisdiction pursuant to *Rooker-Feldman*, it does not constitute an "adjudication on the merits" for *res judicata* purposes.[13] Wiesner's argument misses the mark. Although Wiesner's as-applied claims were dismissed for lack of subject matter jurisdiction pursuant to *Rooker-Feldman*, his general claims that he brings now were dismissed on the merits pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, with full *res judicata* effect.[14] See Com-Tech Assocs. v. Computer Assocs. Int'l, 938 F.2d 1574 (2d Cir. 1991) (dismissal pursuant to Fed. R. Civ. P. 12(b)(6) has full *res judicata* effect).[15]

---

[12] Although Wiesner attempts to characterize his general constitutional claims he brings here are "as applied," in that they are "as-applied by the judiciary defendants to any or all applicants for admission," see Plaintiff's Memorandum in Opposition to Motion to Dismiss at 3 n.4, he is, in actuality, bringing general challenges. See generally Lawrence Tribe, AMERICAN CONSTITUTIONAL LAW § 12-32 (2d ed. 1988) (distinguishing between "general" challenge for vagueness that claims that a statute is vague in all its applications, versus an "as-applied" challenge for vagueness that claims that a statute is vague as applied to the litigant's own conduct).

[13] Wiesner does not argue, nor could he seriously, I believe, that because one Appellate Division Justice has since been replaced, the parties are not the "same" for purposes of *res judicata*.

[14] The Second Circuit's opinion affirming my 1998 dismissal of Wiesner's general constitutional claims recognizes that that dismissal was on the merits. See Wiesner v. Rosenberger, 1999 U.S. App. LEXIS 29259, at *6 ("The district court, however, properly dismissed Wiesner's facial constitutional challenge on the merits.").

[15] Alternatively, Defendants cite authority that constitutional challenges for vagueness outside the context

6

Wiesner also argues that new facts have come to light that transform his general Due Process challenge into a "new" claim, not barred by *res judicata*.  See St. Pierre v. Dyer, 208 F.3d 394, 400 (2d Cir. 2000).  He cites as "new" evidence one academic article that criticizes Law Students and states that an anonymous New York Character Committee interviewer "could not remember what his function was; he would have 'to go back and read the books.'"  Deborah L. Rhode, Moral Character as a Professional Credential, 94 YALE L.J. 491, 515 (1985).  Whereas the Law Students Court noted that the New York bar examiners had been "scrupulous" in their use of their power, Wiesner avers that this new factual evidence warrants reconsideration of Law Students.

However, Wiesner's "new evidence" is not new.  The article, published in 1985, was available to Wiesner when he brought his 1998 action.[16]  Moreover, it is highly doubtful that one academic article could constitute "new evidence" transforming Wiesner's challenge into a "new claim."  More accurately, Wiesner is merely raising new legal arguments on old claims, which are barred by *res judicata*.  See Johnson v. Ashcroft, 378 F.3d 164, 172 (2d Cir. 2004) (since *res judicata* bars claims that could have been originally brought, civil litigants must advance all evidence and legal arguments relating to a claim or controversy in the context of a single proceeding).

Wiesner's geographic Equal Protection challenge to the bar is also barred by *res judicata*, as I dismissed the same challenge pursuant to Fed. R. Civ. P. 12(b)(6) in Wiesner I.  Wiesner I at *17-18.  Wiesner offers no substantively new evidence or arguments today that he did not offer in the 1998 action.[17]

---

of the First Amendment must be brought as-applied.  See United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (challenge to penal statute for vagueness must be brought as-applied).  If Wiesner must bring his vagueness challenge as-applied, it is thus barred under *Rooker-Feldman*, as it was in 1998.

[16] Even though the article Wiesner cites criticizes Law Students on policy grounds, the author recognizes that Law Students remains good law today.  "Of course, the vagueness of prevailing certification standards and inquiries does not of itself establish a constitutional claim."  Rhode, Moral Character as a Professional Credential, 94 YALE L.J. 491, 574.

[17] Although Wiesner argues that the practice of law is a "fundamental right," see Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 281 (U.S. 1985), Defendants note correctly that this analysis only applies in the context of the Privileges and Immunities Clause.  Baccus v. Karger, 692 F. Supp. 290, 293 (S.D.N.Y. 1988) ("strict scrutiny in bar-admissions cases is not warranted on a fundamental-right theory.").

Wiesner also argued at oral argument that, because different Appellate Divisions have admitted ex-offenders to the bar who are arguably less qualified to meet the character and fitness regulations than he, that the different Appellate Divisions' disparate treatment of applicants violates Equal Protection.  Although this argument might be relevant to an as-applied claim, it is not relevant to the general attack on the facial validity of the regulations he brings today.  The character and fitness regulations apply statewide,

B. <u>Wiesner's Remaining § 1983 Claims</u>

Wiesner's remaining federal constitutional claims that he did not bring in 1998 are his general Due Process challenge for failure to require a reason to be set forth for denial, his general Due Process challenge for failure to provide the applicant with the Appellate Division's law assistants' reports, and his First Amendment challenge to the bar admission regulations for vagueness and overbreadth.

At the outset, Wiesner's remaining federal constitutional claims are not barred by *Rooker-Feldman* doctrine. As I held in <u>Wiesner I</u>, Wiesner's general constitutional challenges fall "squarely within" *Rooker-Feldman*'s exception for challenges that do not directly seek federal review of a state court decision.[18] <u>Wiesner I</u> at *9, citing <u>Feldman</u>, 460 U.S. at 482-83 ("[T]o the extent that [plaintiffs] mounted a general challenge to… constitutionality… the District Court did have subject matter jurisdiction"); <u>see also</u> <u>Dubuc v. Michigan Board of Law Examiners</u>, 342 F.3d 610, 618 (6th Cir. 2003) (*Rooker-Feldman* is inapposite where plaintiff brings general challenges that explicitly do not challenge the denials of his individual application for bar admission).

Wiesner's remaining federal constitutional claims are also not barred by *Younger* abstention doctrine, as Wiesner is explicitly not seeking review of the state-court determinations regarding his own application to the bar.[19]

---

and are thus the same across all four Appellate Divisions.  On the face of the regulations, there is no different treatment of applicants in different divisions that could serve as the basis for a geographic Equal Protection challenge.

[18] Wiesner argues in passing that my 1998 dismissal of his as-applied claims pursuant to *Rooker-Feldman* would be decided differently today, because the U.S. Supreme Court has since narrowed the reach of *Rooker-Feldman* doctrine and overruled Second Circuit precedent that I relied on in reaching my 1998 decision.  <u>See</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283 (U.S. 2005) (holding that *Rooker-Feldman* doctrine does not automatically apply to parallel state and federal proceedings), <u>citing</u> <u>Moccio v. New York State Office of Court Admin.</u>, 95 F.3d 195, 199-200; <u>see also</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 81 (2d Cir. 2005) (narrowing *Rooker-Feldman* by interpreting <u>Exxon-Mobil</u> to require four prerequisites before applying *Rooker-Feldman*: 1) the federal-court plaintiff must have lost in state court; 2) the plaintiff must complain of injuries caused by a state-court judgment; 3) the plaintiff must invite district court review and rejection of the state court judgment; and 4) the state-court judgment must have been rendered before the district court proceedings commenced); <u>Ponterio v. Kaye</u>, 2007 U.S. Dist. LEXIS 4105, at *16-19 (S.D.N.Y. Jan. 22, 2007) (federal lawsuit challenging decision of New York State's Administrative Board of the Courts was not precluded by *Rooker-Feldman* doctrine).

However, the application of *Rooker-Feldman* doctrine is irrelevant to Wiesner's instant claims.  Wiesner has explicitly abandoned his as-applied claims.  As for the general constitutional challenges he brings today, those were not dismissed pursuant to *Rooker-Feldman*.

[19] Defendants argue that *Younger* abstention bars Wiesner's claims from consideration, as federal courts should generally refrain from interfering in ongoing state proceedings that implicate important state

As to the balance of Wiesner's claims, of course, *res judicata* also bars claims that could have been raised in a prior proceeding if the two proceedings involve the same "nucleus of operative fact."  Interoceanica Corp v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997).  Here, while the factual predicates of the two actions appear to be extremely similar, in an abundance of caution, I decline to impose *res judicata* on those constitutional claims that he did not raise in 1998.

Still, Wiesner's remaning constitutional claims do not survive this motion to dismiss.

Regarding Wiesner's challenge with regard to some requirement to provide a reason for denial of admission, the New York Court of Appeals has held that the Appellate Division "need not give reasons for denying an applicant admission to the Bar."  In re Anonymous, 766 N.E.2d 948, 950 (N.Y. 2002), citing In re Citrin, 727 N.E.2d 569, 571 (N.Y. 2000) (Appellate Division summarily denied application for reinstatement to the bar "[u]pon the report of the Committee on Character and Fitness and the exhibits annexed thereto.").[20]  Hence, Wiesner's challenge on this issue fails on the merits.

Regarding Wiesner's challenge for failure to provide the applicant with the Appellate Division's law assistants' reports, Defendants correctly note that this would be akin to providing a litigant with bench memoranda prepared by law clerks.  Cf. In re Citrin, 727 N.E.2d 569, 571 (holding that although Appellate Division is required to provide an applicant with the Committee's report, "before such materials are sent to an applicant for reinstatement, they may be redacted to remove Committee deliberations and other confidential information.")  Wiesner's challenge here also fails on its merits.

Lastly, Wiesner's First Amendment challenge to the bar admission regulations for vagueness and overbreadth fails pursuant to the direct Supreme Court precedent of Law Students.  See Law Students, 401 U.S. 154, 159.

---

interests and afford plaintiff an adequate opportunity to raise federal constitutional claims.  See Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74-75 (2d Cir. 2003), citing Younger v. Harris, 401 U.S. 37 (1971).  However, Wiesner's federal claims do not directly challenge the state courts' determination of his own application, nor is Wiesner seeking injunctive relief against the state court proceedings.

[20] The Appellate Division is required to provide an applicant with the Committee's report preceding rejection of his application.  In re Citrin, 727 N.E.2d 569, 571.  However, Wiesner received that report here.

C.  State Law Claims

Having dismissed Wiesner's federal claims, I decline to exercise supplemental jurisdiction over Wiesner's state law claims, for the same reasons that I declined to do so in 1998.  See Wiesner I, 1998 U.S. Dist. LEXIS 15666, at *18-19, citing Lanza v. Merrill Lynch & Company, Inc., 154 F.3d 56, 61 (2d Cir. 1998).

One state law claim merits further note.  Wiesner brings a claim pursuant to New York Corrections Law § 751 *et. seq.*, alleging that the Appellate Division's failure to fairly consider his application for bar admission and failure to set forth a reason for denial violate statutory protections against discrimination against ex-offenders.[21]  Defendants argue that the Committee on Character and Fitness' determination is only reviewable under an "arbitrary and capricious" standard, see Arrocha v. Board of Education, 712 N.E.2d 669, 670-71 (N.Y. 1999), and that the Committee's report sufficed to provide Wiesner with adequate reasons for his denial.

Still, the underlying purpose of the Corrections Law is to provide ex-offenders with a meaningful opportunity to rehabilitate themselves.  See Memoranda of Senator Ralph J. Marino, 1976 N.Y. LEGIS. ANN., at 49-50.[22]  As Mr. Wiesner pointed out at oral argument, it has been 24 years since the events that triggered the Appellate Division's

---

[21] Corrections Law § 752 reads in full: "No application for any license or employment, to which the provisions of this article are applicable, shall be denied by reason of the applicant's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, unless: (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought; or (2) the issuance of the license or the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. CORRECT. LAW § 752 (2006).

Corrections Law § 754 additionally provides: "At the request of any person previously convicted of one or more criminal offenses who has been denied a license or employment, a public agency or private employer shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial." N.Y. CORRECT. LAW § 754 (2006).

[22] See also N.Y. CORRECT. LAW § 753(1)(a) ("The public policy of this state, as expressed in this act, [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses."); Bonacorsa v. Van Lindt, 523 N.E.2d 806, 809 (N.Y. 1988) ("Failure [by ex-offenders] to find employment not only resulted in personal frustration but also injured society as a whole by contributing to a high rate of recidivism."); Michael Meltsner, Marc Caplan, & William C. Lane, An Act to Promote the Rehabilitation of Criminal Offenders in the State of New York, 24 Syr. L. Rev. 885, 886 (1973) ("By imposing collateral consequences on criminal convictions and by failing to impose obligations on employers and others in the private sector to deal equitably with the ex-offender, society places him in what psychologists call a *double bind* – demanding on the one hand 'that the ex-offender become part of an economic and social system which extols a work ethic' while on the other hand inconsistently precluding or greatly discouraging the ex-offender from pursuing many basic employment opportunities.") (citations omitted, emphasis intact).

rejection of his initial application.  Mr. Wiesner has applied for and received a certificate of good conduct from the state Board of Parole which provides him with a "presumption of rehabilitation."[23]  Bonacorsa v. Van Lindt, 523 N.E.2d 806, 808 (N.Y. 1988); see Letter of Neal Wiesner, December 18, 2006, Ex. A.  Mr. Wiesner has apparently rehabilitated himself into a contributing member of society, and I must add he has done this without much help from our state courts despite the philosophy that applauds rehabilitation of ex-offenders.  Without passing judgment on the crimes that Mr. Wiesner committed, most if not all agree that we should provide those convicted of crimes with a genuine chance to rehabilitate themselves and thus, a genuine reevaluation of their circumstances as time passes.

While on this record, one might argue that the caveats to Corrections Law § 751 provide solace, modern day experts in the field of criminology, particularly those studying the rehabilitation of offenders, and even some judges, would likely come out differently.  The fact is that civil disabilities in this state and nation are already an overwhelming obstacle and burden to any ex-offender that decides to "go straight."  To receive a certificate of good conduct – no simple task – and then be found wanting, a quarter-century after your conviction, cannot help but give one pause about our system of justice and those men and women charged with enforcement of its rules.

These thoughts aside, because Mr. Wiesner's proper avenue for his Corrections Law claim is an Article 78 proceeding in state court, I am powerless to consider his claim

---

[23] See N.Y. CORRECT. LAW § 703-a (2006), which provides in relevant part: "A certificate of good conduct may be granted as provided in this section to relieve an individual of any disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein." Id. at § 703-a(1).  "Notwithstanding any other provision of law, a conviction of a crime or of an offense specified in a certificate of good conduct shall not be deemed to be a conviction within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege, covered by the certificate." Id. at § 703-a(2).  "A certificate of good conduct shall not, however, in any way prevent any judicial administrative, licensing or other body, board or authority from considering the conviction specified therein in accordance with the provisions of article twenty-three-a of this chapter." Id. at § 703-a(3).

"A certificate of good conduct may be issued by the State Board of Parole when the Board is satisfied that (a) the applicant has conducted himself or herself in a manner warranting the issuance for a specified period of years -- the length dependent upon the seriousness of the crime, (b) the relief granted is consistent with the rehabilitation of the applicant and (c) the relief granted is consistent with the public interest." Bonacorsa v. Van Lindt, 523 N.E.2d at 808 n.2, citing N.Y. CORRECT. LAW § 703-b.

absent extraordinary circumstances not present here.[24]

If I were in the position to directly review Mr. Wiesner's application, as the New York state courts are, I might be inclined to look more favorably upon his renewed application for admission; but it must be noted that the Defendants have had a far better opportunity than I to view these facts. In any event, it is clear to me that as a federal district judge, I do not properly possess jurisdiction to overturn the determinations of the New York state courts regarding Mr. Wiesner's applications.

## IV. CONCLUSION

For the above-mentioned reasons, I am granting Defendants' motion to dismiss in its entirety.

The Clerk of the Court is directed to close this matter and remove it from my docket.

**SO ORDERED.**
January 24, 2007
New York, New York

U.S.D.J.

---

[24] "It is doubtful… that claims under Article 78 are even amenable to a federal district court's supplemental jurisdiction." Morningside Supermarket Corp. v. N.Y. State Dep't of Health, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006), citing N.Y. C.P.L.R. Art. 78. "'An Article 78 proceeding is a novel and special creation of state law'"… a 'purely state procedural remedy,' 'designed to accommodate to the state court system.'" Id. (citations omitted). SDNY district courts have generally concluded that "Article 78 claims brought in federal court 'must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims.'" Id., citing Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005).

Wiesner argues that I should nevertheless exercise jurisdiction over his Article 78 claim to vacate the Appellate Division's recent order denying reconsideration of his application. He claims that requiring him to bring his Article 78 claim in a state court subject to the Appellate Division's oversight constitutes "extraordinary circumstances" of bias that warrant federal jurisdiction in this case. See Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855, 865 (2d Cir. 1988) (affirming district court's exercise of supplemental jurisdiction over an Article 78 claim pursuant to the All Writs Act, as "necessary to protect the integrity" of a consent decree previously entered by the district court). I do not believe Wiesner's situation constitutes similar "extraordinary circumstances" warranting federal jurisdiction.

12